IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| VICTORIA HARRIS, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-487-P |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.      STATEMENT OF THE CASE**

Plaintiff Victoria Harris ("Harris") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Harris protectively filed her application in February 2016, alleging that her disability began on January 1, 2015. (Transcript ("Tr.") 40, 280.)[1] After her application was denied initially and on reconsideration, Harris requested a hearing before an administrative law judge ("ALJ"). (Tr. 40.) The ALJ held a hearing on September 21, 2021, and issued a decision on September 29, 2021, denying Harris'

---

[1] Harris' original onset date was January 1, 2015, but later changed to June 1, 2016. (Tr. 40, 280, 291, 295, 328, 332, 341.)

applications for benefits. (Tr. 37–59.) On March 25, 2022, the Appeals Council denied Harris'
request for review, leaving the ALJ's September 29, 2021 decision as the final decision of the
Commissioner in Harris' case. (Tr. 28–34.) Harris subsequently filed this civil action seeking
review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* In addition, numerous
regulatory provisions govern disability insurance. *See* 20 C.F.R. Pt. 404. Although technically
governed by different statutes and regulations, "[t]he law and regulations governing the
determination of disability are the same for both disability insurance benefits and SSI." *Greenspan
v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-
step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently
working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful
activity" is defined as work activity involving the use of significant and productive physical or
mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an
impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also
Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392
(5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments
meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404
Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[2] Fourth, if disability cannot be found based

---

[2] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's
residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical
and mental limitations. 20 C.F.R. § 404.1520(a)(4). The claimant's RFC is used at both the fourth and fifth steps of
the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can
still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether
the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.    20 C.F.R. §§ 404.1520(a)(4)(iv), (f).    Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).    At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198.    If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments.    *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole.    *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam).    Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).    It is more than a mere scintilla, but less than a preponderance.    *Id.*    A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision.    *Id.* (emphasis added).    An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ.    *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009).    This Court may    neither    reweigh    the    evidence    in    the    record,    nor    substitute    its    judgment    for    the

Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III.    ISSUES

In her brief, Harris presents the following issues:

1. Whether substantial evidence supports the ALJ's RFC determination; and

2. Whether Berryhill possessed the statutory authority to ratify the appointment of ALJs.

(Plaintiff's Brief ("Pl.'s Br.") at 1–23.)

## IV.    ALJ DECISION

In his September 29, 2021 decision, the ALJ found that Harris had not engaged in any substantial gainful activity since June 1, 2016, her alleged onset date of disability, and that she met the disability insured status requirements of the SSA through June 30, 2016. (Tr. 43.) At Step Two, the ALJ found that Harris suffered from the following "severe" impairments: polymyalgia rheumatica, lumbar degenerative disc disease, cervical degenerative disc disease with radiculitis, thoracic degenerative disc disease, and spondylosis. (Tr. 43 (emphasis omitted).) At Step Three, the ALJ found that Harris did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 44–46.)

As to Harris' RFC, the ALJ stated:

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following qualifications: she could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally. She could never climb ladders, ropes, or scaffolds. She could frequently handle and finger with the left non-dominant upper extremity.

(Tr. 46 (emphasis omitted).) Based upon this RFC assessment, the ALJ concluded that Harris could perform her past relevant work as a customer service representative and apartment manager. (Tr. 49.) Consequently, the ALJ found that Harris was not disabled. (Tr. 51.)

4

## V.    DISCUSSION

### A. <u>RFC Determination</u>

As to her first issue, Harris argues that substantial evidence does not support the ALJ's RFC determination because the ALJ substituted his own medical judgment to determine Plaintiff's RFC. (Pl.'s Br. at 1.) In support of her claim, Harris argues that an ALJ may not rely on his own unsupported opinion as to the limitations presented by the claimant's medical conditions, but must rely on the medical opinions. (Pl.'s Br. at 10.) Further, Harris asserts that the ALJ rejected the only medical opinions of record, interpreted the raw medical data, and imposed a different RFC. *Id.* Furthermore, Harris argues that there was insufficient medical opinion evidence regarding the effects of Harris' physical or mental impairments on her ability to work. (Pl.'s Br. at 10–11.) Harris asserts that this constituted a reversible error because the ALJ had no medical opinion evidence on which to base his determination and the failure to obtain such evidence prejudiced Harris. *Id.* Harris argues that she was prejudiced by this failure because her limitations were greater than what the ALJ accounted for in the RFC. (Pl.'s Br. at 13–14.) In support of her argument, Harris relies on two main points: (1) the state physicians found that there was insufficient evidence to make a determination regarding Harris' limitations; and (2) the VE testified that, if Harris' limitations were worse, it might preclude her from performing her past relevant work. *Id.*

RFC is what an individual can still do despite her limitations.[3] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see*

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

---

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, the ALJ found, as stated above, that Harris had the RFC to perform light work except that she: (1) could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally; (2) could never climb ladders, ropes, or scaffolds; and (3) could frequently handle and finger with the left non-dominant upper extremity. (Tr. 46–47.) In making the RFC determination, the ALJ considered the opinions of Rudy A. Herrera, M.D. ("Dr. Herrera"), Thuan Vu, M.D. ("Dr. Vu"), T. Brent Duncan, M.D. ("Dr. Duncan"), and State agency medical consultants ("SAMCs"), as well as other medical evidence in the record, stating:

> Dr. Herrera noted reduced and painful range of motion in the cervical spine, but negative straight leg raises, normal strength in the upper and lower extremities, and normal sensation and reflexes; he recommended a cervical epidural steroid injection ("ESI") and refilled the claimant's pain medications (1F/30-32).
>
> . . . .
>
> The claimant saw [Dr. Vu] on January 26, 2016, for consultation regarding body inflammation and diffuse pain, especially in her back. Dr. Vu noted significant stiffness of the back with some muscle tightness and tenderness with mild range of motion limitations on her back and neck. Peripheral joints were unremarkable. Dr. Vu ordered lab work (5F/2-3).
>
> . . . .
>
> The claimant saw [Dr. Duncan] on February 8, 2016, reporting pain, soreness, stiffness, muscle tenderness, joint pain, decreased range of motion, fatigue, and weight loss. Based on lab work, Dr. Duncan diagnosed the claimant with polymyalgia rheumatica. He noted tenderness in the extremities but full range of motion.

. . . .

At the hearing, the claimant testified primarily to her back pain, left hand pain and weakness, and left arm pain, which she explained limited her abilities to perform activities around the house such as cooking and cleaning.  The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the objective evidence.

. . . .

Physical examination findings, very conservative treatment—Dr. Herrera had recommended ESIs for the claimant's spine but the claimant did not pursue them before the date last insured—and a lack of ER visits/hospitalizations for exacerbation of symptoms do not support the claimant's allegations.

. . . .

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.  The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: The state examiners found insufficient evidence to decide the claimant's claim (1A; 3A; 5A; 7A; 9A).  The undersigned finds these opinions unpersuasive as they are not consistent with the evidence recited above.

(Tr. 47–49.)

Harris, citing *Ripley* and other similar cases, argues that the ALJ erred when he agreed with the VE and found that Harris could perform light work with limitations, including past relevant work, as there was no other medical opinion in the record establishing Harris' RFC.  (Pl.'s Br. at 10-11.)  In *Ripley*, the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion.  67 F.3d at 557.  The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[5] but not clearly establishing the effect that condition had on

_____

[5] "The evidence that was available for review by the ALJ shows a four-year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony.  *Id.*

his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557–58. The Fifth Circuit rejected the argument that the evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart,* 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). Additionally, the ALJ has discretion when weighing evidence in the record. *Chambliss v. Massanari,* 269 F.3d 520, 523 n.1 (5th Cir. 2001) (per curiam). The ALJ, in making his RFC determination, dedicated three pages to considering and analyzing the medical and other evidence in the record. (Tr. 46-49.) The ALJ considered the medical evidence in the record, including Dr. Herrera's findings, a lack of emergency room visits or hospitalizations for exacerbation of symptoms, and Harris' own testimony to determine Harris' RFC. *Id.* The ALJ discussed the evidence in making his RFC determination, explained the reasoning for such determination and for giving less weight to certain evidence.

While there is some medical evidence to support the ALJ's determination, Harris emphasizes that the ALJ substituted his lay opinion of the medical data for that of a medical expert because there are no medical opinions regarding the effects of Harris' impairments on her RFC or whether she is disabled. (Pl.'s Br. at 10-13.) To refute Harris' argument, the Commissioner cites to *Joseph-Jack v. Barnhart* for the proposition that the absence of medical testimony from a

9

treating physician specifically about the effect of a claimant's impairments on her ability to work does not mean that the ALJ made an RFC determination without substantial evidence. *See Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003); *see also Glass v. Barnhart*, 158 F. App'x 530, 532 (5th Cir. 2005). "In *Joseph-Jack*, the ALJ relied on state medical consultants who had reviewed the claimant's medical evidence and determined that the claimant was not disabled. The ALJ created the RFC but did so relying heavily on the opinions of medical experts." *Moore v. Saul*, No. 3:20-cv-161, 2022 WL 987735, at *3 (N.D. Miss. Mar. 31, 2022) (citing *Joseph-Jack*, 80 F. App'x at 318). Accordingly, the Court notes that *Joseph-Jack* does not stand for the proposition that the ALJ may interpret medical data himself but rather affirms the ALJ's role in crafting the RFC in reliance on medical expert opinion.

In addition, the Court finds persuasive the analysis from a number of district courts throughout the Fifth Circuit that have continued to consider whether the ALJ impermissibly relied on his or her lay opinion to form an RFC. *See, e.g., Barbara H. v. Kijakazi*, No. 3:20-cv-1890-X, 2022 WL 300541, at *4 (N.D. Tex. Jan. 12, 2022) ("Here, the ALJ rejected all the medical expert evidence concerning the effects of [the plaintiff's] impairments and determined [the plaintiff's] RFC based on his own evaluation of findings from [the plaintiff's] various physical exams, tests, and readings. This RFC determination is not supported by substantial evidence.") (collecting cases)); *Lopez v. Saul*, No. SA-19-cv-01088, 2020 WL 4934462, at *4 (W.D. Tex. Aug. 22, 2020) ("Where 'the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error.'") (quoting *Garcia v. Berryhill*, No. EP-17-CV-00263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018)); *Deborah S. v. Comm'r of Soc. Sec. Admin.*, No. 4:20-cv-1580, 2021 WL 4442514, at *6 (S.D. Tex. Sept. 28, 2021) ("Here, there were no other medical opinions the ALJ considered. In an opinion short on

discussion of the medical records, the ALJ improperly substituted his opinion without reasoning and analysis for all four medical opinions to formulate an RFC."). The 2017 regulatory changes, regarding the ALJs discretion in forming the RFC, do not allow the ALJ to overstep the bounds of a lay person's competence and render a medical judgment. *See Moore v. Saul*, 3:20-cv-161-MPM, 2022 WL 987735 at *2 (N.D. Miss. March 31, 2022) ("And by 'raw medical evidence,' this court is referring to evidence that does not permit 'common-sense judgments about functional capacity' and instead requires the ALJ to 'overstep the bounds of a lay person's competence and render a medical judgment.' . . . A lay person would not readily understand how medical notations about disc bulging and 'moderate facet degenerative changes' impact one's ability to work.") (citing *Minor v. Astrue*, No. 1:13-cv-17, 2014 WL 936438, at *6 (S.D. Miss. March 10, 2014) (citing *Gordils v. Sec'y of Health and Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990))).

Based on this precedent, the Court considers whether the ALJ impermissibly substituted his lay opinion as there was no medical opinion in the record that stated the effects of Harris' limitations on her ability to work or if she was disabled.[6] "If the ALJ finds no medical opinion of record to be even partially persuasive, there is typically an evidentiary gap in the record between the claimant's raw medical data, impairments, and remaining ability to work." *Miller v. Comm'r of Soc. Sec.*, No. 1:20-cv-194, 2021 WL 7541415, at *9 (S.D. Miss. Dec. 17, 2021), R.& R. adopted, 2022 WL 566175 (S.D. Miss. Feb. 24, 2022) (citing *Martin v. Berryhill*, No. 4:19-CV-115-JMV, 2020 WL 5089390, at *3 (N.D. Miss. Aug. 28, 2020)). Therefore, "[u]nless the remaining record 'clearly establish[es]' the effect that the claimant's condition has on her ability to work, the ALJ must fill this gap with another medical opinion." *Id.* (quoting *Ripley*, 67 F.3d at 557); *see also*

---

[6] While the ALJ uses certain medical findings to contradict Harris' alleged limitations, there are no medical opinions that lay out limitations on her ability to work or reach a determination regarding whether Harris is disabled. Thus, while the ALJ may have found some medical findings to be persuasive, there were no medical opinions regarding her ability to work on which he could have reasonably relied when making the RFC determination.

*Brian K. L. v. Comm'r of Soc. Sec.*, No. 4:20-cv-2810, 2022 WL 902641, at *6 (S.D. Tex. Mar. 28, 2022) ("'Consequently, when the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error.'" (quoting *Garcia*, 2018 WL 1513688, at *2)).

In the present case, as stated above, the ALJ noted that the state examiners found insufficient evidence to determine whether Harris was disabled. While the ALJ reviewed similar factors to the ALJ in *Joseph-Jack*, this case is distinguishable because unlike *Joseph-Jack* the ALJ did not rely on any medical opinion that stated the effects of Harris' limitations on her ability to work or whether she was disabled. In large part, the ALJ did not rely on such an opinion because none exists in the record. Thus, while the ALJ uses raw medical reports regarding Harris' symptoms to form the RFC, the ALJ does not find any medical opinion persuasive. As there is no medical opinion of record that is at least partially persuasive, the Court can only conclude the ALJ substituted his own lay opinion for that of the medical expert opinions of record and there is an evidentiary gap. Miller, 2021 WL 7541415, at *9. Thus, there is not substantial evidence to support the ALJ's RFC assessment and the Court must determine such error caused harm.

### B. **Whether the Error was Harmless**

"'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). Accordingly, the Court may not vacate the judgment unless Harris shows she was prejudiced by the ALJ's error. *See Mays*, 837 F.2d at 1364. Prejudice occurs when procedural errors cast doubt on the existence of substantial evidence in support of the ALJ's decision. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam).

In this case, the Court finds that the ALJ's substitution of his lay opinion for that of the medical expert opinion was not harmless error. The ALJ rejected all medical opinion evidence of record which could be used to reasonably conclude that Harris' RFC was appropriate. Remand is necessary when as here, the ALJ rejected all available medical opinions, cited raw medical data, and made judgments regarding the claimant's RFC. *Beachum v. Berryhill*, No. 1:17-cv-0009, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018) (internal citation omitted)). Accordingly, the ALJ's substitution of his lay opinion is not harmless, and remand is required as to this issue.

## C. Appointments Clause

While remand is required as to the first issue, the Court will still address Harris' Constitutional argument. The next issue is whether Berryhill, the Acting Commissioner of the Social Security Administration at the time the ALJ in this case was appointed, lacked the statutory authority under the FVRA to ratify the appointment of ALJs in 2018. In her brief, Harris argues that Berryhill lacked such authority and, consequently, that the case must be remanded for a new hearing as the ALJ was not properly appointed and lacked authority to hear Harris' claim. (Pl.'s Br. at 10–18; *see also* Plaintiff's Reply Brief at 1–8.) District courts in the Fifth, Fourth, and Eighth Circuits have considered this issue and determined that such ALJs were properly appointed. *See Spain v. Soc. Sec. Admin.*, No. 21-2367, 2023 WL 1786722, at *4–7 (E.D. La. Jan. 18, 2023), *rec. adopted*, 2023 WL 1779186 (E.D. La. Feb. 6, 2023); *Boller v. Comm'r, SSA*, No. 4:21-CV-01001-SDJ-CAN, 2022 WL 18586837, at *7 (E.D. Tex. Dec. 12, 2022), *rec. adopted*, 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023); *Watts v. Kijakazi*, No. 21-2044, 2022 WL 18109797, at *10–15 (E.D. La. Nov. 18, 2022), *rec. adopted*, 2023 WL 35799 (E.D. La. Jan. 3, 2023); *Silva v. Kijakazi*, No. 2:21-CV-00301, 2022 WL 18144262, at *6–7 (S.D. Tex. Oct. 5, 2022), *rec. adopted*, 2023 WL 123789 (S.D. Tex. Jan. 5, 2023); *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), *rec.*

*adopted*; *Rush v. Kijakazi*, 65 F.4th 113 (4th Cir. 2023), *rec. adopted*.[7]  Based on this precedent, the Court finds and concludes that Berryhill possessed the statutory authority to ratify the appointment of the ALJ in this case.  Therefore, the Court rejects Harris' argument that the ALJ lacked authority to hear her case.

## RECOMMENDATION

For the reasons ser forth above, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED.**

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d

---

[7] The undersigned acknowledges the recent opinion, from this district, which held that Berryhill lacked statutory authority to ratify the appointment of ALJs. *See Miller v. Commissioner*, No. 4:21-CV-1007-O, 2023 WL 3814551 at *7 (N.D. Tex. June 5, 2023).  However, until the 5th Circuit, or other courts in this district, have ruled on the aforementioned case, the undersigned feels compelled to rule in concert with current precedent and the majority of judges in this district and circuit.

1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 5, 2023**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED August 22, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE